No. 14,419.

In re Austjford.

AUSTJFORD *v.* GUTHNER, MANAGER OF SAFETY.
(121 P. [2d] 891)

Decided January 26, 1942.

Mr. JOSEPH F. LITTLE, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, As-

sistant, Mr. DUKE W. DUNBAR, Assistant, Mr. HAROLD I. BACHELLER, Deputy Attorney General of Wyoming, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

A HABEAS corpus proceeding was instituted in the district court of the City and County of Denver by plaintiff in error Austjford, herein designated as petitioner. He alleged in his petition that he had been arrested illegally, and held in custody and restrained of his liberty unlawfully by Byron G. Rogers, attorney general of the state of Colorado, William E. Guthner, sheriff and ex officio manager of safety of the City and County of Denver, James E. Childers, captain of detectives of the City and County of Denver, and August Hanebuth, chief of police of the City and County of Denver. We herein refer to these officials as respondents.

Respondents, by way of answer to the petition, in which was incorporated a general demurrer, denied generally all of the allegations therein and, among other things, affirmatively alleged:

"That the said Harold B. Austjford is now and at all times herein mentioned has been in the custody of and has been restrained by the duly elected, qualified and acting Sheriff of Fremont County, Wyoming, under and by virtue of a warrant issued out of and from the District Court of Fremont County, Wyoming, pursuant to an information theretofore filed in said District Court of Fremont County, Wyoming, charging the said petitioner herein with the offense of obtaining a stock certificate by false pretenses, which said offense under the laws of the State of Wyoming is a felony. A verified copy of said warrant is attached hereto, made a part hereof and marked 'Exhibit A.'

"The said Sheriff of Fremont County, Wyoming, who has the custody of said petitioner, presents the body of said petitioner to this Court, notwithstanding the fact that he has not been made a respondent or in anywise made a party to the proceedings herein."

They asked that the petition be dismissed and that petitioner be remanded to the custody of the sheriff of Fremont county, Wyoming, for conveyance to the state of Wyoming for trial. Hearing was had before the court and judgment entered dismissing the petition and ordering that petitioner be remanded to the custody of the Wyoming officers. To review this judgment petitioner prosecutes a writ of error.

The pertinent facts gleaned from the pleadings and the evidence introduced on the hearing, are substantially as follows:

Petitioner had resided with his family, a wife and one child, in the state of Colorado for a period of approximately nine years. On May 5, 1938, two police officers of the City and County of Denver, arrested, and placed him in the city jail. Prior to the arrest, a telegraphic request for his detention had been received by the Denver officers from the authorities in Wyoming. At the time of the arrest the Denver officers had in their possession a copy of the warrant issued on a criminal information filed in Wyoming, and on the hearing of the habeas corpus petition the original of that warrant was produced, identified and admitted for comparison with the copy set forth as an exhibit in respondents' answer.

Harry S. Harnsberger, a member of the Wyoming bar, testified to the ratification and enactment into law by the state of Wyoming of the interstate compact, contained in chapter 180, Colorado Session Laws 1937. He also testified that he was county and prosecuting attorney of Fremont county, Wyoming, and also a deputy sheriff of the same county and state; that he accompanied the Denver officers when they made the arrest of petitioner for the purpose of immediately returning

him to the state of Wyoming under authority of the aforesaid interstate compact; and that it was his intention, if given his custody, immediately to do so, there to place him on trial on the mentioned information.

Clayton Danks testified that he was the sheriff of Fremont county, Wyoming, that he had in his possession the warrant issued on the information, and produced it for inspection by the court and for comparison with the exhibit attached to respondents' answer. He further testified that the original warrant was not in the possession of the Colorado officers when petitioner was arrested but that subsequent to that time, and before the hearing, it was brought by him to Colorado.

Numerous assignments of error are presented challenging the constitutionality of the Interstate Compact, which assignments we do not set out because, in the view that we take of the case, the compact is not applicable to the situation disclosed by the record and bill of exceptions in this case. The question of its applicability is raised by petitioner's assignments of error numbered 11 and 12.

The state of Colorado was authorized to enter into interstate compacts for the more efficient enforcement of penal laws and to facilitate the suppression, detection and punishment of crimes, by chapter 141 of Colorado Session Laws 1935. It should be noted that of the four objectives mentioned in that enabling act, only one relates to the arrest of fugitives from justice from other states. It authorized a compact to be entered into concerning "the arrest of any person or persons, who may have fled from any one of such compacting states into another, by any pursuing officer or officers of the compacting state from which such person or persons have fled." The other objectives relate to the return of witnesses, facilities for the detection of crime, and to the supervision of parolees. The legislative approval of the compact entered into pursuant to this act, contained two articles of agreement (subsections 2 and 3 of section 2,

chapter 180, Session Laws of Colorado 1937) which evidently are those relied upon by respondents in this case, although they are not specifically mentioned in the record or briefs. They are as follows:

"(2) That any member of a duly organized State, county or municipal peace unit of said State may at any time enter another State, party to this Compact, and there apprehend and take into custody any person who has committed a felony in said State, or who is a fugitive from justice as herein designated, and for that purpose no formalities shall be required, other than establishing the authority of the arresting officer.

"(3) All legal requirements to obtain extradition of any person who has committed a felony in said State, or who is a fugitive from justice as herein designated, arrested under conditions herein specified, are hereby expressly waived by the compacting States, and said duly constituted officer shall be permitted to transport said prisoner through any and all States, parties to this Compact, without interference whatsoever."

What the Colorado and Wyoming officers are attempting to do in reality in this case, and the effect of the court's judgment delivering petitioner to the Wyoming sheriff for conveyance to Wyoming, is to substitute the above quoted subsections for existing extradition laws. There is nothing in the compact to indicate that it was ever intended so to operate. The enabling act, pursuant to which the compact was entered into, makes no mention of extradition. The compact merely attempts to authorize and validate an extraterritorial arrest by an officer from a foreign compacting state. Subsection 3 of section 2 of the act attempts to waive extradition requirements when the fugitive is arrested by officers of another state "under conditions herein specified." The conditions specified are arrest while in pursuit, or arrest and taking into custody in this state by officers of another compacting state. No such question is here involved, for both the pleadings and uncontroverted evi-

dence disclose that there was no pursuit and no arrest and taking into custody in this state by officers from another state. The arrest was made by Denver police officers on a telegraphic request and a copy of the Wyoming warrant. Petitioner was restrained of his liberty by them and by them held in the Denver county jail. The writ of habeas corpus was directed to them. True, the answer alleged that he was in the custody of the Wyoming sheriff and that the latter, though not a party to the proceedings, produced him to the court; but these allegations are not borne out by the testimony of the witnesses. Under the actual fact situation disclosed, petitioner was not arrested or held by virtue of any proceedings of the Wyoming officers authorized by the compact. Arrests were made similarly and prisoners held under the laws as they existed before the compact was authorized, or entered into. This arrest having been so made, all the respondents and the Wyoming authorities could have done was to proceed to extradite petitioner under existing laws. This, it appears from the evidence, they had no intention of doing, but to the contrary they expressed the intention of taking petitioner out of the state without the formality of an extradition which, under the circumstances, they were without legal authority to do. Permission so to do was the effect of the judgment of the district court. In our opinion its judgment was erroneous and consequently we withhold appellate approval. On the evidence before the district court, petitioner was entitled to be released.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE BOCK and MR. JUSTICE BURKE concur in the result.

MR. JUSTICE BAKKE and MR. JUSTICE JACKSON did not participate.